**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL CASE NO. 20-2-DLB-CJS-1**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**v.**                    **MEMORANDUM OPINION AND ORDER**

**LAVONE GANITHUS DIXON, JR.**                                           **DEFENDANT**

                    * *    * *    * *    * *    * *    * *    * *

Defendant Lavone Dixon has filed two motions that are currently pending before the Court: a Renewed Motion for Judgment of Acquittal (Doc. # 155) and a Motion for New Trial (Doc. # 156). The United States has filed a Response to both Motions (Docs. # 159 and 160). Dixon filed a Reply in support of his Motion for New Trial (Doc. # 161). The time for further briefing under the Local Rules having expired, *see* LCrR 47.1(d), both Motions are now ripe for the Court's review. For the reasons stated herein, Defendant's Motions are **denied**.

**I.      PROCEDURAL HISTORY**

In a Superseding Indictment returned on July 9, 2020, Defendant was charged with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 1) and possession of firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 2). (Doc. # 61). On June 26, 2020, Dixon filed a Motion to Suppress evidence, including four firearms, obtained in a search of his joint residence with co-Defendant Tiffany Thompson on Overland Road in Richmond, Kentucky. (Doc. # 53). The Court denied the Motion to Suppress on March 10, 2021, (Doc. # 105), and the case

proceeded to a jury trial starting on May 17, 2021 and ending on May 20, 2021, (Docs. # 142 and 145).  After the Government's presentation of evidence, Defendant made an oral motion for Judgment of Acquittal on the firearm charge (Count 2), which was denied. (Doc. # 144).  Defendant renewed his oral motion at the close of trial, which was denied for a second time.  (Doc. # 145).  The jury returned a verdict of guilty on both Counts. (Doc. #149).

## II.    ANALYSIS

### A.    *Motion for Judgment of Acquittal*

Defendant's renewed Motion for Judgment of Acquittal seeks acquittal on Count 2 of the Superseding Indictment, which charges Dixon with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. # 155).   According to Defendant, the evidence presented at trial was insufficient to support a conviction on Count 2.  (*Id.*).  In support of his argument, Dixon states that the firearms were discovered during a search that occurred while he was incarcerated, the firearms had been purchased by co-Defendant Thompson, and most of the firearms were found under the hood of Thompson's car with another found in the spare bedroom of Thompson's home. (*Id.* at 5).  In a recorded call between Thompson and her mother, Thompson directed her mother around the house instructing her where to find the firearms.  (*Id.*).   Thus, Defendant argues that the firearms belonged to Thompson, not Dixon, and that there was no evidence presented at trial that Dixon knew where the firearms were located.  (*Id.* at 5-6).  In addition, Defendant asserts that testimony that Dixon had been previously seen with a firearm is insufficient to establish he was in possession of a firearm on or near September 22, 2019, as alleged in the Superseding Indictment.  (*Id.* at 6).

### 1.      Standard of Review

A district court may enter a judgment of acquittal if the government's proofs are legally insufficient to sustain a conviction.  *United States v. Paulus*, 894 F.3d 267, 274 (6th Cir. 2018) (citing Fed. R. Crim. P. 29).  In resolving this question, the Court must view the evidence "in the light most favorable to the prosecution," and may not enter a judgment of acquittal if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Persaud*, 866 F.3d 371, 380 (6th Cir. 2017) (emphasis in original).   The court may not independently weigh the evidence or judge the credibility of witnesses.  *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).  Furthermore, "[t]he government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004).  Thus, a convicted defendant challenging the sufficiency of the evidence in a Rule 29 motion faces an "uphill battle." *United States v. Wagner*, 382 F.3d 598, 610 (6th Cir. 2004); *see also United States v. Ray*, 803 F.3d 244, 262 (6th Cir. 2015) ("A defendant who claims insufficiency of the evidence bears a very heavy burden.").

### 2.      The evidence presented during trial was sufficient for a finding that the Defendant knowingly possessed a firearm

Viewing the evidence in the light most favorable to the prosecution, sufficient evidence was presented at trial for a reasonable juror to conclude beyond a reasonable doubt that Dixon possessed a firearm on or about September 22, 2019.  The parties submitted a stipulation to the jury that Dixon was convicted of a felony that he was aware of prior to September 22, 2019.  (Doc. # 140 at 1).  The parties also agreed in the stipulation that the seized firearms from the Overland Road residence, including a Smith

3

& Wesson pistol, Sig Sauer pistol, and Jennings pistol had traveled in interstate or foreign commerce. (*Id.* at 1-2). Thus, the only element of Count 2 that Dixon contests is his knowing possession of one or more of the seized firearms.

Multiple witnesses testified that the residence at Overland Road where the firearms were seized was the joint residence of Defendant Dixon and his former girlfriend and co-Defendant Tiffany Thompson. (*See* Tr. Day 1 at 64:23-25; Tr. Day 2 at 10:25, 11:1-16, 13:6-8, 52:16-19). Thompson also testified that Dixon was the one making payments on the Overland Road house that they lived in together. (Tr. Day 3 at 19:22-24, 20:2-8).

One of the seized firearms, the pearl-handled Jennings pistol, was seized from a black box in Dixon's music studio located in the home. (Tr. Day 2 at 138:18-25, 19:1-13). Informant Amy Perry testified that Dixon showed her the Jennings pistol, which she identified as "his little pearl handle gun," in his music studio where he kept it in a black box. (*Id.* at 15:6-16). Ms. Perry testified that she saw the gun a couple of times during the summer of 2019. (*Id.* at 16:18-19).

Amy Perry testified that Dixon showed her another gun that he was "proud of." (Tr. Day 2 at 16:24-25, 17:1-15). She testified that she could see the outline of that gun on one or two trips to obtain drugs from Dayton, Ohio and had most recently seen Dixon with the gun about a month before his arrest. (*Id.* at 17:13-15, 18:9-25). Further, Ms. Perry stated at trial that Dixon had mentioned that good hiding places for guns would be the attic or garage. (*Id.* at 18:5-8). That firearm, a Smith & Wesson handgun, was found under the hood of a silver BMW parked in the garage of the Overland Road residence. (*Id.* at 140:18-23, 141:2-3). Thompson testified that she bought the Smith & Wesson at a pawn shop, but that Dixon picked out the gun, asked her to buy it, and kept the gun in

his music studio.  (Tr. Day 3 at 39:3-23, 40:6-8).  Thompson also testified that Dixon paid for their cars, including their two BMWs.  (*Id.* at 32:8-15).

As reflected in the jury instructions (Doc. # 147), for a conviction under 18 U.S.C. § 922(g)(1), the Government need only prove constructive, not actual possession.  (*Id.* Inst. No. 18); *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).  In addition, the Government need not "prove that Defendant was the only one who has possession of the . . . firearms" as "[t]wo or more people can together share actual or constructive possession over property."  (*Id.* Inst. No. 19); *United States v. Shaffer*, 781 F. App'x 404, 414 (6th Cir. 2019) ("[J]oint possession can constitute constructive possession.") (citing *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005)). Thus, at trial, the United States only had to show that Dixon "knowingly had the power and intention to exercise dominion and control over the discovered firearms."  *Shaffer*, 781 F. App'x at 414 (alterations omitted) (quoting *United States v. Grubbs*, 506 F.3d 434, 440 (6th Cir. 2007)). As summarized below, the evidence at trial, viewed in the light most favorable to the prosecution, was sufficient to satisfy that standard.

Ms. Perry testified that she saw Dixon with at least two of the seized firearms at his joint residence with Thompson on Overland Road on multiple occasions and within a month of his arrest.  Thompson testified that Dixon had picked out the Smith & Wesson as his gun, which Ms. Perry saw on Dixon's person on several occasions.  The Jennings pistol was seized from a black box in Defendant's music room, consistent with Ms. Perry's testimony about where Dixon had shown her the gun.  The Smith & Wesson was seized from under the hood of a BMW parked in the garage.  Ms. Perry testified that Dixon mentioned the garage as a good hiding place for guns, Thompson testified that Dixon had

purchased all of their vehicles, and several witnesses testified regarding Dixon's modus operandi of hiding drugs under the hood of vehicles.  (*See, e.g.*, Tr. Day 1 at 48:20-25, 49:1-8; Tr. Day 3 at 36:11-15).  This evidence is sufficient to support a reasonable juror's conclusion, beyond a reasonable doubt, that Dixon knowingly possessed at least one of the seized firearms on or around September 22, 2019.  Defendant's argument that the firearms were owned by Tiffany Thompson and were found in *her* home and vehicle is unavailing, as joint possession is sufficient to show possession, *see Shaffer*, 781 F. App'x at 414, and several witnesses testified regarding Dixon and Thompson's joint residence and Dixon's purchase of their vehicles.  Defendant's argument regarding his lack of actual possession on or around September 22, 2019 is also unpersuasive, as the United States presented sufficient evidence of his constructive possession.  *See Campbell*, 549 F.3d at 374.  Accordingly, Defendant's renewed Motion for Judgment of Acquittal is **denied**.

### B.    *Motion for New Trial*

#### 1.    **Standard of Review**

Also pending before the Court is Defendant's Motion for New Trial.  (Doc. # 156). Federal Rule of Criminal Procedure 33(a) provides that a district court "may vacate any judgment and grant a new trial if the interest of justice so requires."   Defendant argues that he is entitled to a new trial because the United States committed a *Brady* violation. (Doc. # 156).  To establish a *Brady* violation, a defendant must demonstrate the following: "1) that the government suppressed evidence, either willfully or inadvertently; 2) that such evidence was favorable to the defense, either because it is exculpatory or because it is impeaching; and 3) that the suppressed evidence was material (*i.e.*, that prejudice ensued)."  *United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014) (citing *United*

*States v. White*, 492 F.3d 380, 410 (6th Cir. 2007)).  Evidence is considered material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 560 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  In other words, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 289-90 (1999)).

### 2.     Defendant has not demonstrated a *Brady* violation occurred

Defendant's Motion for a New Trial asserts that the United States committed a *Brady* violation by failing to disclose records from the Grant County Jail, where Dixon was transported after his arrest, that show that a cell phone was logged in with his property upon being checked into the jail.  (Doc. # 156 at 1-2).  According to Defendant, if disclosed, this evidence could have been used to impeach several witnesses who testified at trial that Dixon did not have a cellphone upon arrest, implying that he discarded the phone he used to make several calls earlier that day in an attempt to conceal evidence. (*Id.*).

During a bench conference, defense counsel represented to the Court that he obtained the Grant County Jail log sometime during the week prior to the start of the trial. (Tr. Day 4 at 38:15-18).  The document was brought to the Court's attention following the presentation of evidence.  The United States agreed to stipulate to the document's authenticity and the property log was admitted into evidence as an exhibit.  (*Id.* at 41:2-7, 15-19).  The United States acknowledged the property log showing the cell phone during

7

its closing argument.  (*Id.* at 76:8-12).  Defense counsel also raised the property log in his closing argument, using it to impeach Kentucky State Trooper Giles and other witnesses who testified earlier that Dixon did not have a cell phone when he was arrested.  (*Id.* at 85:13-19).

The first issue with Defendant's *Brady* argument is timing.  The Sixth Circuit has held that "the *Brady* doctrine requires only the production of material in time for its effective use at trial."  *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994).  Here, defense counsel had obtained, on his own initiative, the Grant County Jail property log at some point during the week before trial.  He stated to the Court that he did not realize the impeachment value of the property log until the missing cell phone issue came up during trial, and that he did not have time to subpoena a witness to testify about the cell phone. (Tr. Day 4 at 38:20-24).  However, it is undisputed that defense counsel had the property log in his possession in advance of the start of trial.  Had defense counsel obtained the information sooner, it would not appear to have altered his strategy, as he apparently did not realize its potential use for impeachment purposes until the witnesses testified about the missing cell phone at trial.  Rather than attempt to use the property log during the presentation of evidence, defense counsel raised the existence of the log at the close of trial.  Thus, based on defense counsel's representations to the Court, it is apparent that he had the property log in time for its effective use at trial—for impeachment purposes— but neglected to present the evidence until the close of evidence.  Moreover, because the United States agreed to stipulate to the document's authenticity, no witness was required for that purpose.

The second issue with Defendant's *Brady* argument is prejudice or materiality.  The property log was admitted into evidence and brought to the jury's attention.  (*Id.* at 44:9-19).   Both sides acknowledged the property log and the apparent existence of the cellphone in their closing arguments with defense counsel specifically noting that the log contradicted the earlier statements of several witnesses who testified that no cellphone was found on Dixon at the time of his arrest.  (*Id.* at 76:8-12, 85:13-19).   Because the impeachment evidence was presented at trial, there is no reasonable probability that, had the evidence been disclosed sooner, the result of the proceeding would have been different.  *See Dado*, 759 F.3d at 560.  Further, because the jury had the information about the property log prior to its deliberations and Defendant was able to use the log to impeach earlier witness testimony during his closing argument, the Court is convinced that Defendant "received a fair trial . . . resulting in a verdict worthy of confidence."  *See id.* (quoting *Strickler*, 527 U.S. at 289-90).

Finally, Defendant has not demonstrated that the property log was either in the United States' possession or that the United States was aware of the property log indicating that a cellphone was logged in upon Dixon's booking into the facility.  *Brady* imposes a "duty on the part of the prosecutor to disclose material evidence that is favorable to the defendant over which the prosecution team has control."  *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).  Yet, "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess."  *Id.* (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975)).  Further, "*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."  *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

9

Here, the United States represented to the Court that the prosecution team had not seen the property log prior to defense counsel's submission of the log at trial and that the property log was not in their custody.  (Tr. Day 4 at 46: 18-23).  Defendant does not dispute that the Government was not aware of and did not possess the log.  Rather, Defendant argues that Kentucky State Police Trooper Giles who arrested Dixon and transported him to the Grant County jail was aware of the existence of the cellphone and that the United States, therefore, had a duty to learn this information possessed by the officer who was acting on the government's behalf.  (Doc. # 156 at 2); *see Graham*, 484 F.3d at 417.  Yet, there is no evidence that Trooper Giles was aware of the existence of a cell phone or that he was involved in the jail's property intake process once Dixon was transported to the jail.  Accordingly, Defendant's argument that the prosecution had a duty to learn about the property log is unpersuasive.   Further, the fact that Defendant successfully requested and obtained a copy of the property log from the Grant County Jail demonstrates that it was not "wholly within the control of the prosecution."  *Bell*, 161 F.3d at 344.  Therefore, Defendant's Motion for New Trial is **denied**.

## III.   CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     Defendant's Renewed Motion for Judgment of Acquittal (Doc. # 155) is **denied**; and

(2)     Defendant's Motion for New Trial (Doc. # 156) is **denied**.

This 19th day of July, 2021.



**Signed By:**

*David L. Bunning*

**United States District Judge**